UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Normark Corporation d/b/a Rapala,,

Plaintiff,

vs.

Z-Man Fishing Products, Inc.,

Defendant.

---

Civil File No. _____

**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

**Jury Trial Requested**

Plaintiff Normark Corporation d/b/a Rapala ("Plaintiff" or "Normark") files this Complaint against Defendant Z-Man Fishing Products, Inc. ("Defendant" or "Z-Man") and alleges as follows:

## NATURE OF THE ACTION

1.      Normark seeks a declaratory judgment of non-infringement of certain alleged trademark and trade dress rights asserted against Normark by Defendant Z-Man.

## THE PARTIES

2.      Normark is a corporation formed and existing under the laws of the State of Minnesota with its principal offices at 10395 Yellow Circle Drive, Minnetonka, Minnesota 55343.

3.      Upon information and belief, Z-Man is a corporation formed and existing under the laws of the State of South Carolina with principal offices at 4838 Jenkins Avenue, North Charleston, South Carolina 29405 and 4100 Carolina Commerce Parkway, Ladson, South Carolina 29456.

## JURISDICTION

4.      This Court has jurisdiction over this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Trademark Laws of the United States (15 U.S.C. § 1051, *et seq*.). This Court has supplemental jurisdiction over the remaining claims in this action pursuant to 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over the parties because they have regular and systematic contacts with Minnesota, which include transacting and soliciting business within Minnesota, relating directly to the products, trademarks and designations at issue in this action.

6.      Upon information and belief, Defendant Z-Man intentionally and purposefully directs its products such that the same will be sold and are sold in the State of Minnesota.

7.      Z-Man's actions have resulted in Defendant's products being offered for sale and being sold in numerous retail locations throughout Minnesota. Such actions have resulted in sales of Defendant's products in Minnesota, including fishing lures or other products bearing the CHATTERBAIT designation and/or purported trade dress at issue in this action.

8.      Upon information and belief, the website www.zmanfishing.com is owned, operated and/or controlled by Defendant.

9.      Upon information and belief, Defendant's products, which are sold under

and/or include the designation CHATTERBAIT and/or the trade dress alleged to be at issue in this action, are offered for sale on Defendant's website (www.zmanfishing.com). Upon information and belief, Defendant uses this website to regularly and systematically offer to sell and/or sell its products within the State of Minnesota, including products with or under the designation CHATTERBAIT and/or relating to the trade dress alleged to be at issue in this action.

10.     Through its website, www.zmanfishing.com, Defendant has identified numerous retailers that maintain physical retail locations within Minnesota and/or sell Defendant's products in Minnesota.  These retailers are identified by Defendant as its "dealers."

11.     Upon information and belief, Defendant has purposefully and intentionally established distribution channels within the State of Minnesota by entering into business relationships with third-party retailers located in Minnesota, such as Cabela's, Scheels, Thorne Bros. and Ted Capra's Sporting Goods, who act as and are "dealers" of Defendant's products.

12.     Upon information and belief, Defendant has used and continues to use the established distribution channels that Defendant created through its network of "dealers," including those dealers located in Minnesota, to purposefully and intentionally direct Defendant's products to Minnesota.

13.     Upon information and belief, Defendant has also purposefully and intentionally established distribution channels within the State of Minnesota by entering into business relationships with national and/or regional third-party retailers, including

3

Wal-Mart, Mills Fleet Farm and Dick's Sporting Goods, which maintain locations in

Minnesota and sell Defendant's products in Minnesota, including Defendant's products,

which are sold under and/or include the designation CHATTERBAIT and/or the trade

dress alleged to be at issue in this action.

14.     Upon information and belief, Defendant entered into relationships with the

aforementioned national and/or regional third-party retailers with the expectation and

with the intention that Defendant's products would be sold in Minnesota and such that

Defendant's products are currently being sold in the Minnesota stores operated by the

national and/or regional third-party retailers.

15.     Upon information and belief, Defendant has used and continues to use the

established distribution channels that Defendant created through its network of national

third-party retailers, including those national and/or regional third-party retailers that

maintain and operate retail locations in Minnesota, to purposefully and intentionally

direct Defendant's products to Minnesota.

16.     Pursuant to the U.S. Constitution and Minn. Stat. Ann. § 543.19, this Court

has personal jurisdiction over Defendant because Defendant has directly or indirectly

transacted business within the State of Minnesota, by actions which include offering to

sell, shipping, distributing and/or selling products, directly or through intermediaries in

Minnesota, which are sold under and/or include the designation CHATTERBAIT and/or

the trade dress alleged to be at issue in this action, and Defendant has engaged in acts in

the State of Minnesota, including issuing and delivering a cease and desist letter to 10395

Yellow Circle Drive, Minnetonka, Minnesota.  A copy of this cease and desist letter is

included herewith as Exhibit 1.  Each of these actions give rise to and relate directly to the matters at issue in this action.

17.     Venue is proper in the District of Minnesota pursuant to 28 U.S.C. §1391(b)-(c) because Defendant is subject to the court's personal jurisdiction with respect to this civil action, and, upon information and belief, the acts that form the basis of this complaint were committed in this district.

## FACTUAL BACKGROUND

18.     Normark designs, markets and distributes fishing, hunting and outdoor sporting goods under the RAPALA® brand and other brands, including TERMINATOR®.

19.     Normark is an authorized user of U.S. Trademark Registration No. 3,151,173 ("the '173 Registration") for the trademark

**TERMINATOR** for "fishing equipment, namely, lures, rods and reels."

20.     In or about July 2018, Normark began advertising and offering for sale, under the TERMINATOR® trademark, fishing lures including an ovular or elliptical blade and product packaging including the descriptive words "Shudder Bait," which merely describe certain characteristics of the fishing lure (referred to hereinafter as the "TERMINATOR® Fishing Lure"). An example of the subject TERMINATOR® Fishing Lure and product packaging is depicted in Figure A below.



FIGURE A

21.      Upon information and belief, Z-Man is the owner of U.S. Trademark

Registration No. 3,418,405 ("the '405 Registration") for the designation

CHATTERBAIT for "fishing lures,"  the owner of U.S. Trademark   Registration No.

3,481,423 ("the '423 Registration") for the stylized designation *CHATTERBAIT* for

"fishing lures" and the owner of U.S. Trademark Registration No. 3,497,265 for the

designation CHATTERBLADE ("the '265 Registration") for "fishing lure parts sold as

an integral component of fishing lures."

22.      Upon information and belief, Z-Man is the owner of U.S. Trademark

Registration No. 3,505,384 ("the '384 Registration") for the following product

configuration  for "fishing lures," which Z-Man describes as "the five

unattached sides of a hexagonal blade portion of a fishing lure."

23.     The '405 Registration, '423 Registration, '265 Registration and '384

Registration are referred to herein collectively as the "Alleged Z-Man Marks."

24.     Z-Man has alleged that Normark is infringing or will infringe the Alleged

Z-Man Marks, by selling the TERMINATOR® Fishing Lure because it includes an

ovular or elliptical blade and the product packaging includes the descriptive words

"Shudder Bait," which merely describe certain characteristics of the TERMINATOR®

Fishing Lure.  Examples of the subject TERMINATOR® Fishing Lure are depicted in

Figures A and B.



FIGURE B

25.     The word "Shudder" merely describes the "erratic, hard pounding, sweeping action" of the TERMINATOR® Fishing Lure and word "Bait" simply identifies that the product is, in fact, fishing bait.

26.     The words "Shudder Bait" are used by others in the fishing tackle industry to describe certain characteristics of other fishing baits.

27.     On or about July 24, 2018, Defendant sent Normark a formal cease and desist letter alleging that Normark is infringing or will infringe the Alleged Z-Man Marks, by selling the TERMINATOR® Fishing Lure.

28.     In the formal cease and desist letter, Defendant demanded that Normark cease and desist from using the merely descriptive words "Shudder Bait" with the TERMINATOR® Fishing Lure "[t]o avoid legal action" by Defendant.

29.     Normark denies that it has infringed or will infringe any alleged trademark or trade dress purportedly owned by Defendant.

30.     Normark denies that the sale of the TERMINATOR® Fishing Lure by retailers has infringed or will infringe any alleged trademark or trade dress purportedly owned by Defendant.

31.     Normark has made substantial preparations to make, import, offer for sale, sell and distribute the TERMINATOR® Fishing Lure in the United States, including in Minnesota.

32.     By virtue of all the foregoing circumstances, there is an immediate, real and justiciable controversy that exists between Normark and Defendant, regarding Normark's right to make, import, offer for sale, sell and distribute the subject TERMINATOR® Fishing Lure and utilize the merely descriptive words "Shudder Bait" therewith, free of an allegation by Defendant that such conduct constitutes an infringement of trademark or trade dress rights allegedly owned by Defendant or free of any threat of legal action by Defendant concerning the same.

33.     Under the circumstances alleged herein, a substantial controversy exists between Normark and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment regarding the parties' adverse legal interests with

respect to the subject TERMINATOR® Fishing Lure and the use of the merely

descriptive words "Shudder Bait" therewith, and the Alleged Z-Man Marks.

34.     The Court may and should exercise its broad discretion to adjudicate this

action under the Declaratory Judgment Act.

## COUNT 1
### First Cause of Action: Declaratory Judgment of Non-Infringement
### ('423 Registration, '405 Registration and '265 Registration)

35.     Normark incorporates by reference the allegations of the preceding

paragraphs as if fully set forth herein.

36.     Defendant has clearly alleged that the marketing, use and sale of the

TERMINATOR® Fishing Lure by Normark is infringing or will infringe the Alleged Z-

Man Marks.

37.     Normark's use of the words "Shudder Bait" serves only to identify or

describe certain characteristics of the TERMINATOR® Fishing Lure and does not

function to identify the source of the TERMINATOR® Fishing Lure.

38.     Normark's use of the words "Shudder Bait" with the TERMINATOR®

Fishing Lure, is not likely to cause confusion or mistake among customers that

Normark's TERMINATOR® Fishing Lure originates from Defendant, or that Normark is

affiliated with or endorsed by Defendant.

39.     Normark's use of the words "Shudder Bait" with the TERMINATOR®

Fishing Lure, does not infringe the statutory rights accorded to the '423 Registration, the

'405 Registration, the '265 Registration and/or any of the other Alleged Z-Man Marks,

does not constitute unfair competition and does not dilute any trademark owned by Defendant.

40.     Plaintiff is entitled to a declaratory judgment that by making, selling, advertising or otherwise using the words "Shudder Bait" with the TERMINATOR® Fishing Lure, Normark is not infringing, has not infringed, and is not liable for infringing the '423 Registration, the '405 Registration, the '265 Registration and/or any of the other Alleged Z-Man Marks, either directly or by inducing others to infringe or by contributing to infringement by others.

## COUNT 2
## Second Cause of Action: Declaratory Judgment of Non-Infringement
## ('384 Registration / Alleged Trade Dress)

41.     Normark incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

42.     Defendant markets and sells a fishing lure that Defendant self-describes as the "Chatterbait bladed swim jig" (referred to herein as the "Chatterbait Lure").

43.     Defendant has alleged that it owns trademark or trade dress rights in the overall design of the Chatterbait Lure, including, but not limited to, the hexagonal shape of the blade and the combination and placement of a blade with the jig, the skirt and the trailer portions of the lure (referred to herein as the "Alleged Trade Dress").

44.     Defendant does not own any protectable rights in the Alleged Trade Dress and/or the Alleged Trade Dress is invalid and unenforceable with respect to the combination and placement of a blade, jig, skirt and trailer portion of a fishing lure because such features are generic in the fishing tackle industry and such features are of

common ordinary usage in connection with goods in the fishing tackle industry, namely fishing lures.

45.     Examples of the use of such generic and commonly used features by others in the fishing tackle industry include, but are not limited to, the products depicted in Figure E below.

46.     The use of the combination and placement of a blade, jig, skirt and trailer on a fishing lure is a well-known and a common basic shape or design for fishing lures.

47.     The use of such generic features, including the combination and placement of a blade, jig, skirt and trailer portion of a fishing lure, by others in the fishing tackle industry was admitted by the Defendant during the prosecution of the Trademark Application that became the '384 Registration.

48.     The combination and placement of a blade, jig, skirt and trailer in the TERMINATOR® Fishing Lure is not confusingly similar to and does not infringe any valid or enforceable trademark or trade dress rights supposedly owned by Defendant, including the Alleged Trade Dress.

49.     Defendant has clearly alleged there is confusing similarity between the blades and placement of the blades on the TERMINATOR® Fishing Lure and the Chatterbait Lure.

50.     Defendant has also clearly alleged the TERMINATOR® Fishing Lure by Normark is infringing or will infringe the '384 Registration and the Alleged Trade Dress.

51.     The shape and configuration of the TERMINATOR® Fishing Lure, including as shown in Figures A and B, is not likely to cause confusion or mistake among

customers nor likely to deceive customers into believing that Normark's

TERMINATOR® Fishing Lure originates from Defendant, or that Normark is affiliated

with or endorsed by Defendant.

52.     The shape and configuration of the TERMINATOR® Fishing Lure is not

likely to cause confusion or mistake among customers for at least the reason that the

blade of the TERMINATOR® Fishing Lure is not confusingly similar in shape, size, or

configuration to the '384 Registration and/or the Alleged Trade Dress.

53.     The shape and configuration of the TERMINATOR® Fishing Lure blade is

entirely distinct from the shape claimed in the '384 Registration and/or the Alleged Trade

Dress for at least the reason that the blade of the TERMINATOR® Fishing Lure is ovular

or elliptical and not hexagonal.

54.     A side-by-side comparison of the blade of the TERMINATOR® Fishing

Lure and the '384 Registration, as provided below in Figures C and D, plainly establishes

that the TERMINATOR® Fishing Lure blade is not confusingly similar to the shape and

configuration claimed in the '384 Registration and/or the Alleged Trade Dress.



FIGURE C - TERMINATOR®
Fishing Lure



FIGURE D - '384 Registration

55.    During the prosecution of the Trademark Application that became the '384 Registration, Defendant acknowledged that other manufacturers of fishing lures were already using rounded or elliptical blades on fishing lures and acknowledged that these blades were "differently shaped" and embodied a "unique shape" as compared to the hexagonal shape claimed in the '384 Registration and Alleged Trade Dress.

56.    During the prosecution of the Trademark Application that became the '384 Registration, Defendant filed a response with the United States Trademark Office, on or about June 25, 2007, asserting that the blade shapes shown in Figure E below, including elliptical and rounded blades,  were "differently shaped" and embodied a "unique shape" compared to the hexagonal shape claimed in the '384 Registration and Alleged Trade Dress.



The Booyah Boogie Bait          The Stanley Swim Jig          The Chatterbox by Nichols Lures

FIGURE E

57.    As a direct result of Defendant's representations to the United States Trademark Office concerning the "differently shaped" and "unique" blade shapes, the United States Trademark Office issued the '384 Registration.

58.    Contrary to the prior admissions before the United States Patent and Trademark Office that rounded and elliptically shaped fishing lure blades were

"different" and "unique" as compared to the hexagonal blade depicted in the '384 Registration, Defendant now inconsistently claims that the rounded or elliptical blade of the TERMINATOR® Fishing Lure is confusingly similar to the shape and configuration claimed in the '384 Registration and/or the Alleged Trade Dress and infringes the '384 Registration and/or the Alleged Trade Dress.

59.     Through Defendant's prior admissions before the United States Patent and Trademark Office, Defendant has conceded that the rounded or elliptical blade of the TERMINATOR® Fishing Lure is not confusingly similar to the hexagonal shape claimed in the '384 Registration and/or the Alleged Trade Dress and conceded that the rounded or elliptical blade of the TERMINATOR® Fishing Lure does not infringe the '384 Registration and/or the Alleged Trade Dress.

60.     As a result of the prior admissions before the United States Patent and Trademark Office, Defendant is, at least, estopped from claiming that the rounded or elliptical blade of the TERMINATOR® Fishing Lure is confusingly similar to the blade shape claimed in the '384 Registration and/or the Alleged Trade Dress.

61.      As a result of the prior admissions before the United States Patent and Trademark Office, Defendant is, at least, estopped from claiming that the rounded or elliptical blade of the TERMINATOR® Fishing Lure infringes the '384 Registration and/or the Alleged Trade Dress.

62.     The shape and configuration of Normark's TERMINATOR® Fishing Lure, including the blade shape and the combination and placement of a blade, jig, skirt and trailer, is not likely to cause confusion or mistake among customers that Normark's

TERMINATOR® Fishing Lure originates from Defendant, or that Normark is affiliated with or endorsed by Defendant.

63.     Normark's TERMINATOR® Fishing Lure does not infringe the '384 Registration, the Alleged Trade Dress and/or any other valid or enforceable trademark or trade dress rights supposedly owned by Defendant, does not constitute unfair competition and does not dilute any trademark or trade dress owned by Defendant.

64.     Plaintiff is entitled to a declaratory judgment that by making, selling, advertising or otherwise using the TERMINATOR® Fishing Lure, Normark is not infringing or diluting, has not infringed or diluted, and is not liable for infringing or diluting the '384 Registration, the Alleged Trade Dress, any of the other Alleged Z-Man Marks and/or any other valid or enforceable trademark or trade dress rights supposedly owned by Defendant, either directly or by inducing others to infringe or by contributing to infringement by others.

## COUNT 3
### Third Cause of Action: Declaratory Judgment that
### Defendant's Alleged Trade Dress is Invalid and Unenforceable

65.     Normark incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

66.     Defendant has alleged that it owns trademark or trade dress rights in the overall design of its Chatterbait Lure, including, but not limited to, the combination and placement of a blade with the jig, the skirt and the trailer portions of the lure (referred to herein as the "Alleged Trade Dress").

67.     Defendant's Alleged Trade Dress is a mere modification of a commonly adopted and well-known form of ornamentation for fishing lures.  The configuration of a fishing lure which includes a combination and placement of a blade with a jig, skirt and trailer is not unique or unusual in terms of the shape or design of a fishing lure.

68.     The Alleged Trade Dress is generic within the meaning of the Lanham Act and is not entitled to protection as a trademark and cannot legally function as a trademark.

69.     Defendant does not own any protectable trade dress and/or the Alleged Trade Dress is invalid and unenforceable with respect to the combination and placement of a blade, jig, skirt and trailer portion of fishing lures because such features are generic in the fishing tackle industry and/or are functional.

70.     Plaintiff is entitled to a judgment declaring that Defendant does not own any protectable trade dress and/or the Alleged Trade Dress is invalid and unenforceable with respect to the combination and placement of a blade, jig, skirt and trailer portion of fishing lures because the features are generic and/or functional and are not entitled to protection as a trademark and cannot legally function as a trademark.

**COUNT 4**
**Fourth Cause of Action: Declaratory Judgment that**
**Defendant's Alleged Trade Dress is Not Famous**
**('384 Registration / Alleged Trade Dress)**

71.     Normark incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

72.     Defendant has alleged that the Alleged Trade Dress and hexagonal blade of the Chatterbait Lure, depicted in the '384 Registration, have become famous.

73.     Defendant's Alleged Trade Dress and the hexagonal blade of the Chatterbait Lure, depicted in the '384 Registration, are not famous within the meaning of the Lanham Act for at least the reason that these configurations are not known or widely recognized by the general public as a designation of the source of the goods of Defendant.

74.     Plaintiff is entitled to a judgment declaring that Defendant's Alleged Trade Dress and hexagonal blade of the Chatterbait Lure, depicted in the '384 Registration, are not famous within the meaning of the Lanham Act.

75.     Plaintiff is entitled to a declaratory judgment that by making, selling, advertising or otherwise using the TERMINATOR® Fishing Lure, Normark is not diluting, has not diluted, and is not liable for diluting the '384 Registration, the Alleged Trade Dress, any of the other Alleged Z-Man Marks and/or any other valid or enforceable trademark or trade dress supposedly owned by Defendant, either directly or by inducing others to infringe or by contributing to infringement by others.

### Request for Relief

Wherefore, Normark respectfully requests the entry of judgment against Defendant providing the following relief:

A.     Finding that Normark is not infringing, has not infringed, and is not liable for infringing any of the Alleged Z-Man Marks, the Alleged Trade Dress, and/or any other valid or enforceable trademark or trade dress supposedly owned by Defendant,

either directly or by inducing others to infringe or by contributing to infringement by others by making, selling, advertising or otherwise using the TERMINATOR® Fishing Lure and/or using the descriptive words, "Shudder Bait" therewith*;*

B.      Finding that Normark is not diluting, has not diluted, and is not liable for diluting any of the Alleged Z-Man Marks, the Alleged Trade Dress, and/or any other valid or enforceable trademark or trade dress supposedly owned by Defendant by making, selling, advertising or otherwise using the TERMINATOR® Fishing Lure and/or using the descriptive words, "Shudder Bait" therewith*;*

C.      Finding that the Alleged Trade Dress is invalid and unenforceable because the features of the Alleged Trade Dress are generic and/or functional;

D.      Finding that Defendant's Alleged Trade Dress and hexagonal blade of the Chatterbait Lure, depicted in the '384 Registration, are not famous within the meaning of the Lanham Act;

E.      Finding that this is an exceptional case and awarding Plaintiff its attorneys' fees and other expenses of litigation pursuant to 15 U.S.C. § 1117 and/or other applicable laws; and

F.      Granting such other legal and equitable relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all those issues so triable to a jury.

DORSEY & WHITNEY LLP

Dated:  August 9, 2018

By  s/ Shannon L. Bjorklund
    Kenneth E. Levitt (#0253674)
    levitt.kenneth@dorsey.com
    Shannon L. Bjorklund (#0389932)
    bjorklund.shannon@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

Tim F. Williams (Fed. Id. 6276) *(pro hac vice to be submitted)*
Jason A. Pittman (Fed. Id. 10270) *(pro hac vice to be submitted)*
DORITY & MANNING, P.A.
P.O. Box 1449
Greenville, S.C. 29602-1449
Telephone:  (864) 271-1592
Facsimile: (864) 233-7342
timw@dority-manning.com
jpittman@dority-manning.com

*Attorneys for Plaintiff Normark Corporation d/b/a Rapala*